# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

|  |  |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, as an organization; JAMES C. BRAY; and JAMES C. CLEMENTS, <br><br> *Plaintiffs*, <br><br> vs. <br><br> MERIWETHER COUNTY BOARD OF ELECTIONS AND REGISTRATION; HARMON DAVID CALDWELL, MARY MCGILL, and MARK SPRADLIN, in their official capacities as members of the Meriwether County Board of Elections and Registration, <br><br> *Defendants*. | Civil Action No. <br> _____ <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      This action seeks declaratory and injunctive relief to address voting discrimination faced by Black voters in Meriwether County, Georgia. Despite constituting a substantial percentage of the county's population, Black voters are being denied an equal opportunity to elect candidates of choice to the Meriwether County Board of Commissioners ("Meriwether County Board") under the redistricting plan enacted in 2022 in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

2.    The Meriwether County Board controls much of the county's government. The County Board is comprised of five commissioners, each of whom is elected from a single-member district to serve a four-year term.

3.    More than 35% of Meriwether County's population is Black. Yet none of the five districts for the Meriwether County Board are drawn so as to provide Black voters with an equal opportunity to elect candidates of choice.

4.    As a result, all of the members of the Meriwether County Board are white. There is no Black representation on the County Board.

5.    Since the adoption of the 2022 redistricting plan, there have been three competitive elections (i.e., elections with more than one candidate in the general election) for Meriwether County Board seats. All three featured a white candidate running against a Black candidate. There has also been one competitive election for a seat on the Meriwether Board of Education, which employs the same district boundaries as the Meriwether County Board. That election also featured a white candidate running against a Black candidate. In all four of these competitive interracial elections, the Black candidates were defeated.

6.    These outcomes are not the result of chance. Voting patterns are racially polarized in Meriwether County. Black communities demonstrate cohesion in voters' candidate preferences, and Black voters vote cohesively in support of

2

their preferred candidates. White voters typically vote as a bloc against and defeat Black-preferred candidates.

7.      The 2022 redistricting process could have resulted in a different outcome. The districts for the Meriwether County Board of Commissioners could have been—and could readily be—redrawn to reflect the reality that the Black voting age population of Meriwether County is sufficiently large and geographically compact to constitute an effective majority in two out of five districts.

8.      In fact, the Meriwether County Board and the Georgia Legislature were presented with an alternative redistricting plan in 2022 that would have provided for a better opportunity to have Black voter representation on the County Board. The Georgia State House Representative who introduced that alternative map also warned stakeholders that the 2022 redistricting plan risked reducing minority representation on the County Board. Local leadership quickly rejected the alternative plan, citing other purported reasons such as additional burdens on Meriwether County election officials. Instead, a majority of the County Board favored the 2022 redistricting plan over the objection of its sole Black Commissioner, who is, predictably, no longer in office. Not a single town hall was held prior to the adoption of this plan, nor was any community feedback publicly requested or considered.

9.      Under the totality of the circumstances, including the historical, socioeconomic, and other electoral conditions that prevail in Meriwether County, the 2022 redistricting plan violates Section 2 of the Voting Rights Act. The dilution of Black votes under the 2022 redistricting plan continues the long history of discrimination against Black voters in Meriwether County, Georgia.

10.     Plaintiffs bring this action pursuant to 52 U.S.C. § 10301 and 42 U.S.C. § 1983 to enjoin Defendants from conducting further elections under the 2022 redistricting plan for elections to the Meriwether County Board. Unless and until Meriwether County Board districts are redrawn in compliance with Section 2 of the Voting Rights Act, the Court should remedy the harms to Plaintiffs and other Black residents by ordering the implementation of a new, lawful redistricting plan or election plan that ensures that all voters in Meriwether County are afforded an equal opportunity to elect a candidate of their choice.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under federal law. This Court also has jurisdiction of this action pursuant to 28 U.S.C. §§ 1343(a)(4) and 1357, because this is a civil action to secure equitable relief under Section 2 of the Voting Rights Act, which is an Act of Congress that protects the right to vote. 42 U.S.C. § 1983.

4

12.     Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure. Plaintiffs are entitled to relief under, among other provisions of law, 52 U.S.C. § 10301 and 42 U.S.C. § 1983. Upon prevailing, Plaintiffs will further be entitled to fees and costs pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988.

13.     This Court has personal jurisdiction over the Defendants, who are citizens of the State of Georgia.

14.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims has occurred in Meriwether County, which is located entirely within the Northern District of Georgia. Venue is also proper under 28 U.S.C. § 1391(b) because the Defendants are being sued in their official capacities, and each Defendant maintains offices in the Northern District of Georgia.

## PARTIES

15.     Plaintiff GEORGIA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, INC. ("Georgia NAACP") is a non-partisan, non-profit membership organization that was founded in 1941. Its mission is to eliminate racial discrimination through democratic processes and ensure the equal political, educational, social, and economic rights of all persons, in particular African Americans. The Georgia

5

NAACP's work includes efforts to register, educate, and advocate on behalf of Black voters throughout Georgia. It is headquartered in Atlanta and has approximately 10,000 total members, most of whom identify as Black and are legally registered voters. Approximately one-hundred Georgia NAACP members currently live in Meriwether County, including Plaintiffs JAMES BRAY and JAMES CLEMENTS. The Georgia NAACP's membership includes Black voters who reside in all five of the Meriwether County Board districts. These members do not have the ability to elect candidates of their choice to the Meriwether County Board under the current districting scheme. Some of these Black Georgia NAACP members live in an area of Meriwether County that could constitute a remedial district in which an effective majority of the voting age population would be Black. That district would be located in and around Greenville, Woodbury, Lone Oak, and/or other portions of north-central Meriwether County. Furthermore, other Black Georgia NAACP members live in an area that could constitute a second remedial district in which an effective majority of the voting age population would be Black. That district would be located in southern Meriwether County in and around Manchester and Warm Springs. The voting strength of these Black members of the Georgia NAACP who reside in Meriwether County is diluted by the ongoing violation of Section 2 in Meriwether County.

6

16. JAMES BRAY is a citizen of the United States and a resident of the State of Georgia. Mr. Bray has been registered to vote in Meriwether County for decades and he votes regularly. Mr. Bray is the former mayor of Greenville. Mr. Bray is Black. As a result of the 2022 redistricting map, Mr. Bray has been unable to elect candidates of his choice to the Meriwether County Board. Mr. Bray resides in the City of Greenville in dilutive Commissioner District 2. That area could constitute part of a remedial district in which an effective majority of the voting age population would be Black, which would provide a remedy for the existing Section 2 violations. That district would be located in and around Greenville, Woodbury, Lone Oak, and/or other portions of north-central Meriwether County.

17. Reverend JAMES CLEMENTS is a citizen of the United States and a resident of the State of Georgia. Reverend Clements is registered to vote in Meriwether County and he is a regular voter. Reverend Clements works as a pastor and he is a veteran of the United States Army. Reverend Clements is Black. As a result of the 2022 redistricting map, Reverend Clements has been unable to elect candidates of his choice, in particular, candidates who represent the voice of the marginalized and disparaged citizens of Meriwether County, to the County Board. Reverend Clements resides in an unincorporated area of northwestern Meriwether County near Lone Oak, in dilutive Commissioner District 2. That area could constitute part of a remedial district in which an effective majority of the voting

age population would be Black, which would provide a remedy for the existing Section 2 violations. That district would be located in and around Greenville, Woodbury, Lone Oak, and/or other portions of north-central Meriwether County. In 2024, Reverend Clements ran for the position of Meriwether County Commissioner for District 2 but was defeated by current Commissioner Jennifer Snelson.

18.    Defendant MERIWETHER COUNTY BOARD OF ELECTIONS AND REGISTRATION ("Meriwether BOER") has statutory powers, duties and responsibilities concerning Meriwether County elections. The Meriwether BOER oversees and is responsible for the administration of elections in Meriwether County, including elections for the Meriwether County Board under the 2022 redistricting plan at issue in this case. O.C.G.A. § 21-2-40.

19.    Defendants HARMON DAVID CALDWELL, MARY MCGILL, and MARK SPRADLIN are members of the Meriwether County BOER. They are being sued in their official capacities.

## FACTUAL BACKGROUND

### Meriwether County's Persistent and Extensive Socioeconomic Disparities Between Black and White Residents

20.    Meriwether County has a total area of approximately 500 square miles, and it is predominantly rural. Municipalities in Meriwether County include

8

Greenville, the county seat, as well as Luthersville, Gay, Manchester, Warm Springs, and Woodbury.

21.    According to the 2020 Census, the voting age population in Meriwether County is 16,526, approximately 35% of whom identify as non-Hispanic Black and approximately 60% of whom identify as non-Hispanic white.

22.    According to the 2010 Census, the voting age population in Meriwether County was 16,784, approximately 37% of whom identified as non-Hispanic Black and approximately 60% of whom identified as non-Hispanic white.

23.    Black residents of Meriwether County are economically disadvantaged as compared to the county's white residents. The median household income for Black residents is $44,514.  The county's white residents have a median household income of $64,430, which is nearly 45% higher.

24.    More than a quarter of Black Meriwether County residents (27%) have an income below the poverty level, compared to 15% of the county's white residents.

25.    Over a third of Black Meriwether County residents (35%) receive food stamps or SNAP benefits, compared to 16% of the county's white residents.

26.    Nearly one-third of Black Meriwether County residents (29%) between the ages of 18 and 65 do not have health insurance. The percentage of

white Meriwether County residents in that same age bracket who lack health insurance is 16%.

27.    The Meriwether County School District serves approximately 4,100 students, the majority of whom are Black. The school district remains under a 2004 desegregation consent order from the United States District Court for the Northern District of Georgia. The order arose out of a school desegregation suit filed by the United States on August 1, 1969, against the State of Georgia and 81 individual school districts, including the Meriwether County School District. In September 1969, the Court issued a detailed regulatory injunction requiring that each of the individual school districts establish a fully integrated school system in compliance with *Brown v. Board of Education*, 347 U.S. 483 (1954). In 2003, the Meriwether County School District filed a Petition for Declaration of Unitary Status, which would dissolve all injunctions under prior orders. Following discovery, the Court entered the 2004 consent order. That order declared that the Meriwether County School District had not complied with prior orders of the Court and, therefore, had not achieved unitary status in several areas.  The order preserved injunctions related to the assignment of students to schools in the county, the assignment of students to classes and courses, facilities available to Black and white students, and staff hiring and assignments.

28.    Meriwether County's public schools are disproportionately attended by the county's Black and other low-income students. The schools are extremely underfunded, and the county spends less than $4,600 per student annually in instructional expenses. These public schools are poorly performing. For example, at Greenville High School, 64.2% of the student population is Black and over 92% of the students are economically disadvantaged. Only 5% of students demonstrate proficiency in mathematics, and only 15% of the school's students demonstrate proficiency in reading. Not a single student at Greenville High School has passed an Advanced Placement examination in any subject.

**The Meriwether County Board of Commissioners Has Expansive Powers That Touch on Nearly Every Aspect of Meriwether County Residents' Lives**

29.    Under a system known as home rule, the Georgia Constitution generally grants county governments autonomy to govern, administer, and legislate local matters. The Georgia Constitution vests the governing authority of each county with legislative power to adopt ordinances, resolutions, or regulations relating to its property, affairs, and local government consistent with the Georgia Constitution and state law.

30.    County governments such as the Meriwether County Board are granted broad authority under the Georgia Constitution and the Georgia Code that impact much of county residents' lives. For example, under Georgia law "[t]he governing authority of each county has original and exclusive jurisdiction over . . .

[t]he directing and controlling of all property of the county," "[t]he levying of a general tax for general county purposes and a special tax for particular county purposes," and "[t]he establishing, altering, or abolishing of all roads [and] bridges," among other areas.

31.    The specific duties and powers of the Meriwether County Board include "the management and control of County property and the transaction of business affairs of the county," including by "[a]dopting rules and policies," "[a]ppointing members to County Board committees," "[a]pproving capital improvement plans," "[a]uthorizing expenditures," "[e]nsuring citizen concerns are met," "[e]stablishing a budget and levying taxes to finance County services," "[m]aking land-use decisions," "[m]anaging county roads, buildings, and property," "[p]lanning land use within the county," "[p]roviding assistance to constituents as their elected representative," "[s]erving as employer for County personnel," and "[s]erving on several other committees and boards." In addition, the Meriwether County Board hires influential County employees, including the County Administrator, the Building and Zoning Director, the County Clerk, the Emergency Management Director, the Fire/Rescue (EMS) Chief, the Finance Director, and the Public Works Director.

12

**The 2022 Redistricting Plan Dilutes Meriwether County's Black Voters**

32.    The 2022 redistricting plan was drawn based on the results of the 2020 Census.

33.    According to the 2020 Census, approximately 35% of Meriwether County's voting age population identifies as Black.

34.    At the time of the redistricting process, there were four white Meriwether County Commissioners and one Black Commissioner, Shirley Hines, who represented District 1.

35.    On October 26, 2021, the Meriwether County Board voted in favor of requesting that State Representative Debbie Buckner serve as the county's Legislative Sponsor and work with the Georgia Legislative and Congressional Reapportionment Office ("LCRO") on developing a redistricting plan.

36.    The LCRO drafted a map that, relative to the 2010 Census, reduced the Black voting age population in the two districts that had the most Black voters. The 2022 redistricting plan dismantled District 1, the only district represented by a Black Commissioner at the time; the 2022 plan reduced the Black voting age population substantially, down from 44.4% (based on the 2010 Census) to just 28.7%. The new plan also reduced the Black voting age population in District 2 from 50.2% (based on the 2010 Census) to 50.1%.

37.    Black voters do not have an opportunity to elect a candidate of choice in any of the five Commissioner districts under Meriwether County's current redistricting plan.

| Comparison of the 2011 and 2022 Redistricting Plans Based on the Black Voting Age Population | | | | | |
|---|---|---|---|---|---|
| | District 1 | District 2 | District 3 | District 4 | District 5 |
| 2011 plan (based on the 2010 Census) | 44.4% | 50.2% | 29.7% | 37.2% | 25.3% |
| 2022 plan (based on the 2020 Census) | 28.7% | 50.1% | 31.1% | 40.0% | 27.2% |

38.    While Representative Buckner purportedly asked the LCRO to produce a "minimal change map," the plan she proposed, which was ultimately enacted by the Georgia Legislature, made significant changes to the district boundaries for all five County Board districts.

14

| 2011 Redistricting Plan | 2022 Redistricting Plan |
|---|---|



39.     Neither Representative Buckner nor anyone else consulted with Black community leaders in Meriwether County in the course of developing the redistricting plan that was ultimately enacted.

40.     On the other hand, State House Representative David Jenkins, the other state representative whose district covers Meriwether County, consulted with Black community leaders and separately worked with the LCRO to create a different redistricting plan. Representative Jenkins' redistricting plan would have created a stronger Black-majority district, with a Black voting age population of 52.4%. On December 13, 2021, Representative Jenkins submitted a letter

15

addressed to the "Meriwether Redistricting Stakeholders" raising concerns about Representative Buckner's map. *See* Exhibit A.

41. Representative Jenkins' letter said, among other things, that "[t]he effect of this map is that for the first time since the Federal Courts required Meriwether County to elect commissioners in districts as opposed to electing them at large, Meriwether County will have no minority commissioners in its governing body." He also objected that the districts were not compact and divided communities in the north end of the county.

42. On December 14, 2021, Representative Buckner, Representative Jenkins, Senator Randy Robertson, and Bryan Knight of the LCRO attended a meeting of the Meriwether County Board of Commissioners where they—and a handful of key county officials—discussed Representative Buckner's and Representative Jenkins' redistricting plans. This meeting was a "work session" that was not open to members of the general public. *See* Exhibit B.

43. According to the minutes from the December 14 meeting, Mr. Knight represented that the LCRO could not create a map in which two districts had a majority-Black voting age population. There is no evidence in the public record that the LCRO provided any analysis to support this conclusion. On information and belief, no outside experts were consulted to determine whether a map with two majority-Black districts could be created.

16

44. According to the minutes, when Representative Jenkins' alternative redistricting proposal was raised for discussion at the December 14 meeting, certain County officials raised purported administrative concerns with Representative Jenkins' map. Meriwether County Special Projects Director Theron Gay objected that Representative Jenkins' proposed map would cause a tremendous amount of work for the Elections Office. Meriwether County Election Supervisor Patty Threadgill also voiced concern that Representative Jenkins' map would result in "a lot of re-do on the map," apparently referring to the need to designate county voters to the correct district and other election administration changes.

45. According to the meeting minutes, Senator Randy Robertson pushed back on that point, asserting that Election Supervisor Threadgill could make the changes necessary to implement Representative Jenkins' map.

46. On December 28, 2021, Representative Buckner's redistricting map was presented to the Meriwether County Board for a vote. *See* Exhibit C. According to the meeting minutes, when the Board Chairman asked if any of the Commissioners had comments, Commissioner Hines, the only Black Commissioner, suggested that the Board should have hosted Town Hall meetings to allow for citizen input and feedback. Four of the five Commissioners then voted in favor of approving Representative Buckner's redistricting plan. Commissioner

Hines opposed the motion. Representative Jenkins' alternative redistricting plan was never formally presented to the Meriwether County Board for a vote.

47. On January 12, 2022, the Board Chairman moved to approve a resolution requesting that the local legislative delegation present Representative Buckner's redistricting map for enactment by the General Assembly. Four of the five Commissioners voted in favor of the motion; Commissioner Hines again opposed.

48. Representative Buckner's redistricting map was filed in the General Assembly as Senate Bill 386. The Senate Committee on State and Local Governmental Operations favorably reported Senate Bill 386 on February 2, 2022, and it passed the Senate the following day.

49. The Georgia Legislature passed Senate Bill 386 using an atypical process different from the one that legislators employ to enact nearly all local redistricting plans.

50. Local redistricting bills are typically assigned to the House Committee on Intragovernmental Coordination, which, on a routine basis, favorably reports bills that have the support of the county's local delegation under a practice known as "local courtesy." The "local delegation" includes the Georgia State Representatives and Senators who represent districts within the relevant county.

51.    But the Meriwether County redistricting bill, Senate Bill 386, was just one of a handful of local redistricting bills that were referred to the House Governmental Affairs Committee, which has no local courtesy rules and can favorably report redistricting bills notwithstanding opposition from the local delegation.

52.    The House Governmental Affairs Committee favorably reported Senate Bill 386 on February 15, 2022, and it was passed by the House on February 17.

53.    Representative Jenkins, the only Georgia state legislator who lives in Meriwether County, voted against Senate Bill 386.

54.    On March 2, 2022, the Governor signed Senate Bill 386 into law.

55.    Earlier in the session, Representative Jenkins separately filed his redistricting plan for the Meriwether County Board as House Bill 1098. That bill was referred to the House Committee on Intragovernmental Coordination on February 1, 2022, but never received a vote.

**The 2022 Redistricting Plan Deprives Black Voters of any Meaningful Opportunity to Elect Preferred Candidates and Has Resulted in an All-White Board of Commissioners**

56.    Black voters in Meriwether County have been unable to elect a single Black Commissioner since the enactment of the 2022 redistricting plan.

57.    Today, the Meriwether County Board is comprised of five white Commissioners: District 1 Commissioner Gene King; District 2 Commissioner Jennifer Snelson; Vice Chairman and District 3 Commissioner Emmett Collins; District 4 Commissioner Bryan Threadgill; and Chairman and District 5 Commissioner Adam Worsley.

58.    As explained below, Black voters have no meaningful opportunity to elect candidates of their choice in any of the five County Board electoral districts under the 2022 redistricting map.

59.    ***District 1:*** While District 1 had a Black voting age population of 44.4% following the post-2010 Census redistricting of Meriwether County's Board of Commissioner districts, and had been represented by a Black Commissioner prior to the implementation of the 2022 redistricting plan, the 2022 redistricting map sharply curtailed the Black voting age population. The voting age population in District 1 is now 28.7% Black. One Board of Commissioner election has been held in District 1 since the 2022 redistricting plan went into effect. In that election, a Black candidate named Katrina Robertson ran and received only 29.9% of the votes cast. Ms. Robertson lost to Gene King, a white candidate, who received 70.1% of the vote.

60.    ***District 2:*** Under the 2022 redistricting plan, District 2 has a Black voting age population of 50.1%. In the 2024 election for the position of District 2

Commissioner, the Black candidate, Reverend James Clements, lost to the white candidate. Rev. Clements received 49.7% of the votes cast, while the white candidate received 50.3% of the vote. In the November 2024 election, white turnout exceeded Black turnout and white voters constituted a plurality of voters living in District 2 who cast a ballot. This is consistent with voting patterns in Meriwether County, where, due in part to the legacy of discrimination and current social, economic, and political realities, white turnout exceeds Black voter turnout. Indeed, under the 2011 plan, in which District 2 had a Black voting age population of 50.2% according to the 2010 Census, a white candidate, Rosla Plant, defeated a Black opponent in the 2020 County Commissioner District 2 election.

61.    *District 3:* The Black voting age population in District 3 is 31.1% under the 2022 redistricting plan, a small increase from 29.7% under the 2011 plan, leaving Black voters firmly in the minority. In the 2022 election for the position of District 3 Commissioner, the Black candidate, Navarus Jamaal Mahone, lost to a white candidate by a wide margin. Mahone garnered 29.1% of the votes cast, while Emmett Collins captured 70.9% of the vote. District 3 has never been represented by a Black county commissioner.

62.    *District 4:* The Black voting age population for District 4 is 40.0%. While the Black voting age population increased slightly under the 2022 redistricting map, from 37.2% under the 2011 map, District 4 is not a minority

21

opportunity district. In the 2024 election for the position of District 4

Commissioner, incumbent commissioner Bryan Threadgill, who is white, ran

unopposed. District 4 has never been represented by a Black county commissioner.

63.    ***District 5****:* The Black voting age population in District 5 is 27.2%, the

lowest out of all five districts under the 2022 redistricting plan. Under the 2011

map, the Black voting age population was 25.3%. In the 2022 election for the

position of District 5 Commissioner, Adam Worsley, who is white, ran unopposed.

District 5 has never been represented by a Black county commissioner.

**Each of the Three *Gingles* Preconditions for Establishing a Section 2 Vote Dilution Claim Is Satisfied With Respect to the 2022 Meriwether County Board Redistricting Plan**

64.    The United States Supreme Court, in *Thornburg v. Gingles*, 478 U.S.

30 (1986), identified three necessary preconditions for a claim of vote dilution

under Section 2 of the Voting Rights Act: (1) the minority group must be

"sufficiently large and geographically compact to constitute a majority in a single-

member district"; (2) the minority group must be "politically cohesive"; and (3) the

majority must vote "sufficiently as a bloc to enable it . . . usually to defeat the

minority's preferred candidate." *Id.* at 50-51. Plaintiffs satisfy all three *Gingles*

preconditions.

*Gingles I: The Districting Map for the Meriwether County Board Can Be Redrawn to Include Two Majority-Black Districts, or One District with a Significantly More Robust Black Majority and One Minority Opportunity District*

65.    The current redistricting plan unnecessarily divides Black voters between the five single-member Commissioner districts, preventing them from combining to form a strong enough majority in any district to have an equal opportunity to elect a candidate of choice.

66.    With respect to the first *Gingles* precondition, Meriwether County's Black population is sufficiently numerous and geographically compact to constitute a majority of the voting age population in two of the five Meriwether County Board districts.

67.    One of those districts would be located in and around Greenville, Woodbury, Lone Oak, and/or other portions of north-central Meriwether County. This district would include territory that is within Districts 1, 2, and 3 under the current Board of Commissioner plan.

68.    This remedial district can be drawn with a Black voting age population of more than 53%—substantially higher than in any district that exists under the 2022 redistricting plan.

69.    The second majority-Black voting age population district would be located in southern Meriwether County in and around Manchester and Warm

23

Springs. This district would include territory that is within Districts 4 and 5 under the current Board of Commissioner plan.

70. While the LCRO claimed that it would not be possible to draw a map for the Meriwether County Board that includes two majority-minority districts, it is in fact entirely feasible to draw a districting map for the Meriwether County Board that adheres to traditional redistricting principles such as contiguity, compactness, protecting communities of interest, and core retention while including two majority-Black districts.

***Gingles II and III**: Black Voters' Preferred Candidates Are Typically Defeated by White Bloc Voting in Racially Polarized Elections*

71. Voting is racially polarized across Meriwether County.

72. Black communities demonstrate substantial cohesion in voters' candidate preferences. Black voters tend to vote for the same candidates, comprising a politically cohesive minority voting bloc in Meriwether County.

73. In interracial Meriwether County elections, Black voters typically strongly support Black candidates.

74. Meanwhile, white voters typically support white candidates (and oppose Black candidates) in interracial Meriwether County elections. This leads to the defeat of Black-preferred candidates because white voters constitute a majority of the electorate.

24

75.     Data from interracial elections demonstrates the extent of this racial polarization in Meriwether County. For example:

    a.  In the 2024 election for the position of Meriwether County Tax Commissioner, the incumbent Commissioner, who is white, defeated Calandra "Shae" Tenney, who is Black. The white candidate captured 65% of the votes cast, while Ms. Tenney garnered 35% of the vote. An analysis indicates that Ms. Tenney received overwhelming support from Black voters while the white candidate received overwhelming support from white voters.

    b.  In the 2024 election for the position of Meriwether County Coroner, a white candidate defeated Kristian Ellis, who is Black. The white candidate captured 59% of the votes cast, while Mr. Ellis garnered 41% of the vote. An analysis indicates that Mr. Ellis received overwhelming support from Black voters while the white candidate received overwhelming support from white voters.

    c.  In the 2022 election for the District 3 seat on the Meriwether County Board of Education, a white candidate defeated Wacheicqua Watson, who is Black. The white candidate garnered 69.4% of the votes cast, while Ms. Watson garnered 30.6 % of the votes. An analysis indicates that Ms. Watson received

overwhelming support from Black voters while the white candidate received overwhelming support from white voters.

    d.  In the 2020 election for the position of Meriwether County Tax Commissioner, a white candidate defeated Tiffany Prather, who is Black. The white candidate garnered 54% of the votes cast, while Ms. Prather garnered 46% of the votes. An analysis indicates that Ms. Prather received overwhelming support from Black voters while the white candidate received overwhelming support from white voters.

76.    White bloc voting regularly causes the candidates preferred by Black voters to lose elections in Meriwether County.

**The Totality of the Circumstances Confirms That Black Voters Have Less Opportunity Than White Voters to Participate in the Political Process and Elect Representatives of Their Choice**

77.    The totality of the circumstances makes clear that Black voters in Meriwether County have less opportunity than white voters to participate in the political process and elect representatives of their choice to the Meriwether County Board.

78.    The 2022 redistricting plan for the Meriwether County Board of Commissioners lacks proportionality in that the percentage of districts in which

Black voters constitute an effective majority is less than the Black percentage of Meriwether County's voting age population.

79.     An analysis of the facts under the "Senate Factors" demonstrates that the challenged districting scheme dilutes Black voting strength.

**_Senate Factor 1_: _History of Official Voting-Related Discrimination_**

80.     Meriwether County and the State of Georgia have a long and extensive history of voting discrimination against Black voters.

81.     As federal courts have recognized, "[r]acism and race discrimination were . . . the norm" in Georgia. *Brooks v. State Bd. of Elections*, 848 F. Supp. 1548, 1560 (S.D. Ga. 1994). Racism in Georgia "was ratified into state constitutions, enacted into state statutes, and promulgated in state policy." *Id.*; *see also Georgia State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 950 F. Supp. 2d 1294 (N.D. Ga. 2013), *vacated and remanded on other grounds*, 775 F.3d 1336 (11th Cir. 2015).

82.     In 1976, Meriwether County was certified by the U.S. Attorney General for the appointment of federal observers to monitor local elections. Meriwether County is one of 29 Georgia counties to have received such a designation.[1]

---

[1] Following the U.S. Supreme Court's decision in *Shelby County v. Holder*, 570 U.S. 529 (2013), the Department of Justice is no longer relying on the Attorney

83.    In 1984, Meriwether County plaintiffs, including the Meriwether County Voter Education Project, secured a consent decree in a Voting Rights Act action against the Meriwether County Board of Education challenging the adoption of at-large elections for the election of members of the Board of Education. Consent Decree, *Meriwether Voter Educ. Project, et al v. Hicks, et al*, No. C84-117-N (N.D. Ga. Oct. 16, 1984).

84.    Meriwether County plaintiffs, including the Meriwether County Voter Education Project, again secured a consent decree in 1987 in a Voting Rights Act lawsuit enjoining an unlawful method of electing members of the Manchester Board of Commissioners and requiring the creation of a Black-majority voting district. Consent Decree, *Meriwether Voter Educ. Project, et al v. Manchester, et al*, No. 3:86-cv-00006-GET, Dkt. 6 (N.D. Ga. Dec. 31, 1987). The consent decree stated that the at-large method of electing members of the Manchester Board of Commissioners violated Sections 2 and 5 of the Voting Rights Act, as well as the Thirteenth, Fourteenth, and Fifteenth Amendments of the U.S. Constitution.

**Senate Factor 2: The Extent of Racial Polarization**

85.    Voting patterns in Meriwether County elections reflect stark racial polarization. Black voters in Meriwether County are politically cohesive and

---

General's certifications as a basis for sending federal observers to monitor elections.

overwhelmingly support the same candidates in county elections, including in elections for the Meriwether County Board of Commissioners.

86. The white majority usually votes as a bloc in County elections with the usual result of defeating Black voters' candidates of choice. White bloc voting in Meriwether County regularly causes the candidate preferred by Black voters to lose.

87. The racially polarized nature of voting patterns in Meriwether County is evidenced by Black candidates' consistent lack of success in competitive countywide elections.

***Senate Factor 3****: Use of At-large Elections, Majority Vote Requirements, and Other Discrimination-Enhancing Mechanisms*

88. Elections for members of the Meriwether County Board of Commissioners feature voting practices that enhance the opportunity for discrimination against Black voters, including staggered terms and a majority-vote requirement.

***Senate Factor 5****: Effects of Georgia's History of Discrimination*

89. Black residents of Meriwether County bear the effects of discrimination in such areas as housing, employment, and health, which hinder their ability to participate effectively in the political process.

90. Black residents in Meriwether County lag behind the county's white residents in terms of income, homeownership, education, and other metrics. The

29

median income for the county's Black residents is 31% less than that of the county's white residents. A substantially higher percentage of Black residents have incomes below the poverty level (27% as compared with 15% of white residents). Over a third of the county's Black residents receive government assistance for food purchases in the form of food stamps or SNAP benefits, while less than a sixth of the county's white residents receive such benefits. The county's white residents are also far more likely to own a home or have health insurance than the county's Black residents. All of these socioeconomic disparities are correlated with increased burdens on effective political participation.

91.    Children of the county's Black residents disproportionately attend underfunded schools with poor educational outcomes. Public schools in majority-Black areas in Meriwether County are under-resourced—a disparity exacerbated by the disproportionate effect of housing inequality, underemployment, and lower incomes for Black Meriwether County residents on the local tax base. Education is correlated with political participation, and the lack of access to quality education further restricts Black Meriwether County residents' engagement with the political process.

92.    These ongoing effects burden the ability of Black voters in Meriwether County to participate in politics and, at least in part, explain the fact

that white turnout exceeds Black turnout in Meriwether County, including in elections for the Meriwether County Board of Commissioners.

***Senate Factor 7****: Lack of Success of Black Candidates for Office*

93.    Since the adoption of the 2022 districting plan, not a single Black candidate has been elected to serve on the Meriwether County Board, and the Black candidate lost the only interracial election for a seat on the Meriwether County Board of Education, which uses the same electoral districts.

94.    The Meriwether County Board is comprised of five white Commissioners, and every elected countywide office is also held by a white individual.

95.    Upon information and belief, no Black candidate has *ever* prevailed in a contested interracial election for an at-large position in Meriwether County. Despite the county's sizable Black voting age population, not a single elected countywide officer is Black. Meriwether County's Sheriff, Tax Commissioner and Coroner are all white.

96.    Although there are two Black members on the Meriwether County Board of Education, these Black members have never had a contested election.

***Senate Factor 8****: Significant Lack of Responsiveness*

97.    As described above, racial disparities in employment, education, housing, health, and criminal justice have plagued Meriwether County for

31

generations. Yet, the Meriwether County leadership has often opposed specific policies that might ameliorate the challenges faced by Black residents.

98.    For example, Black residents have raised concerns that the Meriwether County Board is not responsive to their community's needs on important issues involving the allocation of County resources and facilities, such as road repairs, the availability of emergency services, and recreation funding.

99.    These examples of non-responsiveness to the concerns of Black voters (among others not detailed here) further demonstrates that Black voters are disadvantaged in the political process and in electing representatives of their choice.

**_Senate Factor 9_: _Tenuous Policy Justification for the Challenged Practice_**

100.    Lastly, the interests asserted in support of passing the current district lines were tenuous at best.

101.    There was no strong policy justification cited by the Meriwether County Commissioners for supporting the 2022 redistricting plan over alternatives that would have better protected Black voting power, including Representative Jenkins' proposal.

102.    Representative Buckner's initial request that the LCRO create a "minimal change map" was not met by the 2022 redistricting plan, which deviated significantly from the boundaries and demographics of the 2011 redistricting plan.

32

103.   Map drawers inaccurately said that a second majority-minority district could not be drawn. There is no evidence in the public record supporting this assertion. On information and belief, no outside experts were consulted to determine whether a map with two majority-Black districts could be created.

104.   The Meriwether County Board and other redistricting stakeholders failed to hold a town hall to discuss redistricting prior to the meeting in which the map was approved. The decision not to hold a town hall is particularly striking in light of the concerns raised by Representative Jenkins and others that the 2022 redistricting plan would dilute Black voting power.

105.   One of the primary reasons given by Meriwether County Board administrators for not considering Representative Jenkins' map involved the administrative challenge of implementing changes that would result from a more substantial redrawing of the district lines. Such administrative burdens do not constitute a valid interest that outweighs the need to provide Black Meriwether County residents with a full and fair opportunity to elect candidates of their choice.

## CLAIM FOR RELIEF

### COUNT ONE:
### VIOLATION OF SECTION 2 OF THE VOTING RIGHTS ACT OF 1965

### (52 U.S.C. § 10301 AND 42 U.S.C. § 1983)
### (Against All Defendants)

106.    The allegations contained in the preceding paragraphs 1 through 105 are re-alleged as if fully set forth herein.

107.    Under the totality of the circumstances, the 2022 redistricting plan for the Meriwether County Board of Commissioners does not afford Black residents, including Plaintiffs and/or their members, an equal opportunity to participate in the political process and to elect representatives of their choice.

108.    Accordingly, the challenged districting scheme results in the denial or abridgement of Plaintiffs' and/or their members' right to vote on account of their race and color by diluting their voting strength as Black residents of Meriwether County, all in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

109.    Plaintiffs are entitled to redress from this violation of their federal rights, including pursuant to 42 U.S.C. § 1983.

110.    Plaintiffs have no adequate remedy at law. Unless the conduct of elections under the Meriwether County Board's current electoral districts is enjoined and a remedial map or another election plan is adopted, Plaintiffs will be

irreparably harmed by being subjected to racial vote dilution in violation of Section 2 of the Voting Rights Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.    Declare that the 2022 redistricting plan presently used in electing the members of the Meriwether County Board of Commissioners violates Section 2 of the Voting Rights Act;

B.    Preliminarily and permanently enjoin Defendants, their agents and successors in office, and all persons acting in concert with, or as an agent of, any Defendants in this action, from administering, implementing, or conducting any future Board of Commissioner elections in Meriwether County, Georgia, under the 2022 redistricting plan;

C.    Order the implementation of a new redistricting plan or election plan for the Meriwether County Board of Commissioners that complies with Section 2 of the Voting Rights Act, and, if Defendants fail to enact or adopt a valid plan by the Court's deadline, order the adoption of a remedial plan that does not abridge or dilute the ability of Black voters to elect candidates of their choice;

D.    Order, if necessary, an interim electoral plan for future elections;

35

E.    Award Plaintiffs their costs, expenses, and disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to and in accordance with 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988;

F.    Retain jurisdiction over this matter until Defendants have complied with all orders and mandates of this Court; and

G.    Grant such other and further relief as the Court may deem just and proper.

Dated: October 9, 2025                    Respectfully submitted,


                                          /s/ Gail Podolsky

                                          PODOLSKY LAW LLC
                                          Gail Podolsky (Ga. Bar No. 142021)
                                          1100 Peachtree Street NE, Suite 900
                                          Atlanta, Georgia 30309
                                          (404) 282-7776
                                          gail@podolsky-law.com

                                          ADVANCEMENT PROJECT
                                          John Powers*
                                          Hani Mirza*
                                          1220 L Street Northwest, Suite 850
                                          Washington, DC 20005
                                          (202) 728-9557
                                          jpowers@advancementproject.org
                                          hmirza@advancementproject.org

                                          SIMPSON THACHER & BARTLETT
                                          LLP
                                          Preston Miller*
                                          Geoffrey Schmelkin*
                                          Shinae Yoon*
                                          900 G Street, NW
                                          Washington, D.C. 20001
                                          (202) 636-5500
                                          preston.miller@stblaw.com
                                          geoffrey.schmelkin@stblaw.com
                                          shinae.yoon@stblaw.com

                                          Joshua Polster*
                                          Nihara K. Choudhri*
                                          Jacob Lundqvist*
                                          425 Lexington Avenue
                                          New York, NY 10017
                                          (212) 455-2000

joshua.polster@stblaw.com
nchoudhri@stblaw.com
jacob.lundqvist@stblaw.com

*Attorneys for Plaintiffs*

*Pro Hac Vice Forthcoming