## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

|  |  |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, as an organization; JAMES C. BRAY; and JAMES C. CLEMENTS, <br><br> *Plaintiffs*, <br><br> vs. <br><br> MERIWETHER COUNTY BOARD OF ELECTIONS AND REGISTRATION; HARMON DAVID CALDWELL, MARY MCGILL, and MARK SPRADLIN, in their official capacities as members of the Meriwether County Board of Elections and Registration, <br><br> *Defendants*. | Civil Action No. 3:25-cv-00222-LMM <br><br> **ORAL ARGUMENT REQUESTED** |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................2

ARGUMENT ...........................................................................................................4

I.  THESE PRIVATE PLAINTIFFS HAVE THE RIGHT TO BRING
    THEIR CLAIM UNDER SECTION 2 OF THE VOTING RIGHTS
    ACT ...............................................................................................................4

    A.  Section 2 Creates a Private Right of Action and Remedy ...................5

    B.  Supreme Court Precedent and Eleventh Circuit Authority
        Support a Private Right of Action Under Section 2 .............................9

    C.  The Legislative History of the Voting Rights Act Confirms
        There Is a Private Right of Action Under Section 2. .........................14

    D.  Even if Section 2 Did Not Confer a Private Right of Action,
        Private Plaintiffs Can Enforce Section 2 Through 42 U.S.C.
        § 1983 .................................................................................................16

II. PLAINTIFFS' CLAIMS ARE NOT BARRED BY LACHES....................20

CONCLUSION .....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. State Conf. of NAACP v. Alabama*,
  949 F. 3d 647 (11th Cir. 2020), *cert. granted, judgment vacated as moot*,
  141 S. Ct. 218 (2021) ............................................................................................8

*Ala. State Conf. of NAACP v. Allen*,
  No. 2:21-cv-1531-AMM, 2025 WL 2451166
  (N.D. Ala. Aug. 22, 2025) ........................................... 7, 8, 12, 13, 14

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ......................................................................................5, 7

*Allen v. State Bd. of Elections*,
  393 U.S. 544 (1969) ................................................................................ 9, 10

*Alpha Phi Alpha Fraternity Inc. v. Raffensperger*,
  700 F. Supp. 3d 1136 (N.D. Ga. 2023) ............................................13

*Aquino v. Hazleton Area Sch. District*,
  No. 3:24-cv-00206-KM, 2024 WL 4592346
  (M.D. Pa. May 1, 2024) ................................................... 11, 12, 13, 14

*State Conf. of NAACP v. Bd. of Apportionment*,
  86 F.4th 1204 (8th Cir. 2023) ..............................................................14

*State Conf. of NAACP v. Bd. of Apportionment*,
  91 F.4th 967 (8th Cir. 2024) ..............................................................14

*Benisek v. Lamone*,
  585 U.S. 155 (2018) ....................................................................................23

*Blessing v. Freestone*,
  520 U.S. 329 (1997) ................................................................................ 17, 18

*Callen v. Daimler AG*,
  No. 1:19-CV-1411-TWT, 2021 WL 4523436 (N.D. Ga. Oct. 4, 2021)...............4

*Caster v. Allen*,
No. 2:21-CV-1536-AMM, 2025 WL 1643532
(N.D. Ala. May 8, 2025) ........................................................................ 12, 13, 16

*Caster v. Merrill*,
No. 2:21-cv-1536-AMM, 2022 WL 264819 (N.D. Ala. Jan. 24, 2022) ...........13

*Chestnut v. Merrill*,
377 F. Supp. 3d 1308 (N.D. Ala. 2019)...................................................... 23, 25

*City of Hammond v. Lake Cnty. Judicial Nominating Comm'n*,
No. 2:21CV160-PPS, 2024 WL 68279 (N.D. Ind. Jan. 4, 2024) ......................13

*Coca v. City of Dodge City*,
669 F. Supp. 3d 1131 (D. Kan. 2023)......................................................... 13, 16

*Common Cause Ind. v. City of Anderson Common Council*,
No. 1:23-CV-01022-JRS-TAB, 2023 WL 6460986
(S.D. Ind. Oct. 4, 2023)....................................................................................20

*Driver v. Hous. Cty. Bd. of Elections*,
No. 5:25-cv-25 (MTT), 2025 WL 2523719 (M.D. Ga. Sep. 2, 2025) ..............13

*Fla. State Conf. of NAACP v. Lee*,
576 F. Supp. 3d 974 (N.D. Fla. 2021) ..............................................................13

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
503 U.S. 60 (1992)...........................................................................................15

*Ga. Coal. for the People's Agenda v. Kemp*,
347 F. Supp. 3d 1251 (N.D. Ga. 2018)..............................................................20

*Ga. State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*,
775 F.3d 1336 (11th Cir. 2015) ........................................................................21

*Ga. State Conf. of NAACP v. Georgia*,
269 F. Supp. 3d 1266 (N.D. Ga. 2017)..............................................................13

*Ga. State Conf. of NAACP v. Georgia*,
No. 1:21-CV-5338-ELB-SCJ-SDG, 2022 WL 18780945
(N.D. Ga. Sep. 26, 2022) ..................................................................................13

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002)................................................................ 5, 17, 18

*Grant v. Raffensperger*,
    No. 1:22-cv-00122, Order [ECF No. 43] (N.D. Ga. Jan. 28, 2022)...................11

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
    599 U.S. 166 (2023)....................................................... 5, 6, 17, 18, 19

*Kason Indus. v. Component Hardware Grp., Inc.*,
    120 F.3d 1199 (11th Cir. 1997). ...........................................................20

*Lifestar Ambulance Serv., Inc. v. United States*,
    365 F.3d 1293 (11th Cir. 2004) ...............................................................4

*Livadas v. Bradshaw*,
    512 U.S. 107 (1994)................................................................... 17, 18

*Maine v. Thiboutot*,
    448 U.S. 1 (1980)..............................................................................18

*Louis Vuitton Malletier S.A.S v. Contour 5151 ONH, LLC*,
    2025 No. 1:23-CV-02818-VMC, 2025 WL 3268849,
    (N.D. Ga. Jan. 28, 2025) .....................................................................20

*Medina v. Planned Parenthood S. Atl.*,
    606 U.S. 357 (2025)..........................................................................17

*Miller v. Thomas, Kennedy, Sampson & Tompkins, LLP*,
    No. 1:20-CV-04717-SCJ, 2021 WL 4815201 (N.D. Ga. June 17, 2021) ..........4

*Miss. State Conf. of NAACP v. State Bd. of Election Comm'rs*,
    739 F. Supp. 3d 383 (S.D. Miss. 2024) .............................................12

*Mixon v. Ohio*,
    193 F.3d 389 (6th Cir. 1999) .............................................................13

*Morse v. Republican Party of Virginia*,
    517 U.S. 186 (1996)............................................................. 7, 8, 9, 10

*Motley v. Taylor*,
    451 F. Supp. 3d 1251 (M.D. Ala. 2020), *aff'd*, 2022 WL 1506971
    (11th Cir. May 12, 2022) ...................................................................24

*Pendergrass v. Raffensperger*,
No. 1:21-CV-05339-SCJ, 2022 WL 1518234
(N.D. Ga. Jan. 28, 2022) .............................................................................. 11, 13

*Perry-Bey v. City of Norfolk, Va.*,
678 F. Supp. 2d 348 (E.D. Va. 2009) ................................................................13

*Peterson v. BMI Refractories*,
124 F.3d 1386 (11th Cir. 1997) ........................................................................11

*Robinson v. Ardoin*,
86 F.4th 574 (5th Cir. 2023) .............................................................................13

*Sanders v. Dooly County*,
245 F.3d 1289 (11th Cir. 2001) ........................................................................23

*Schwab v. Crosby*,
451 F.3d 1308 (11th Cir. 2006) ........................................................................11

*Schwier v. Cox*,
340 F.3d 1284 (11th Cir. 2003) ........................................................................18

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996) ............................................................................................11

*Shelby Cnty. v. Holder*,
570 U.S. 529 (2013) ..........................................................................................11

*Shuford v. Ala. State Bd. of Educ.*,
920 F. Supp. 1233 (M.D. Ala. 1996) ................................................................21

*Singleton v. Allen*,
740 F. Supp. 3d 1138 (N.D. Ala. 2024) .............................................. 5, 6, 7, 13

*Singleton v. Allen*,
782 F Supp 3d 1092 (N.D. Ala. 2025) ......................................................... 6, 13

*Singleton v. Merrill*,
582 F. Supp. 3d 924 (N.D. Ala. 2022) ........................................................ 11, 13

*Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control
& Prevention*,
623 F.3d 1371 (11th Cir. 2010) ..........................................................................4

*Tenn. State Conf. of NAACP v. Lee*,
  746 F. Supp. 3d 473 (M.D. Tenn. 2024) .................................................... 21, 22

*Turtle Mountain Band of Chippewa Indians v. Howe*,
  137 F.4th 710 (8th Cir. 2025) .............................................................14

*United States v. Florida*,
  938 F.3d 1221 (11th Cir. 2019) ..........................................................16

*United States v. Marengo Cnty. Comm'n*,
  731 F.2d 1546 (11th Cir. 1984) ............................................................8

*West v. Warden, Comm'r, Alabama Doc*,
  869 F.3d 1289 (11th Cir. 2017) ..........................................................23

*White v. Daniel*,
  909 F.2d 99 (4th Cir. 1990) ......................................................... 22, 24

*Whitest v. Crisp County*,
  No. 1:17-CV-109 (LAG), 2020 WL 12656251, (M.D. Ga. Aug. 31, 2020) ......21

*Wright v. Sumter Cnty. Bd. of Elections & Registration*,
  979 F.3d 1282 (11th Cir. 2020) ..........................................................22

**Statutes**

42 U.S.C. § 1983 ..................................................................................17

52 U.S.C. § 10301 ..................................................................................6

52 U.S.C. § 10308(f) ..............................................................................9

52 U.S.C. § 10302 .......................................................................... 7, 18

52 U.S.C. § 10310(e) ..............................................................................8

**Other Authorities**

H.R. Rep. No. 227, 97th Cong., 1st Sess. 32 (1981) ..............................15

H.R. Rep. No. 478, 109th Cong., 2d Sess. (2006) ..................................15

S. Rep. No. 295, 94th Cong., 1st Sess. (1975), 1975 WL 12400 ...................... 8, 15

S. Rep. No. 417, 97th Cong., 2d Sess. 30 (1982), 1982 WL 25033 ................ 10, 15

Statement of Interest of the United States, Doc. 27, *Aquino v. Hazleton Area School District*, No. 3:24-cv-00206-KM, 2024 WL 4592346 (M.D. Pa. May 1, 2024) ..................................................................................11

Plaintiffs Georgia State Conference of the NAACP ("Georgia NAACP"), James C. Bray, and James C. Clements (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in opposition to the Motion to Dismiss the First Amended Complaint, Doc. 30 (the "Motion"), filed by Defendants Meriwether County Board of Elections and Registration, Harmon David Caldwell, Mary McGill, and Mark Spradlin (collectively, "Defendants").

## INTRODUCTION

Plaintiffs bring this case to address voting discrimination against Black voters in Meriwether County. While Black voters constitute a substantial percentage— 35% as of the 2020 Census—of the population in Meriwether County, the 2022 redistricting map for the Meriwether County Board of Commissioners deprives Black voters of an equal opportunity to elect candidates of choice, in violation of Section 2 of the Voting Rights Act ("VRA").

Defendants' Motion does not contest Plaintiffs' well-pled discrimination claim set forth in the First Amended Complaint (Doc. 26) ("FAC"). Instead, Defendants seek dismissal on novel and unsupported procedural grounds.

Defendants argue that private parties have no right of action to enforce Section 2 of the VRA. Such a holding would contradict the reasoning of decisions issued by the U.S. Supreme Court, persuasive authority from the Eleventh Circuit, at least thirteen district court decisions within this Circuit, and scores of other decisions

around the country.  As these courts have recognized time and again, Defendants' argument is foreclosed by Section 2's text and structure and the clear direction of Congress, as reflected in the relevant legislative history.  Finally, Defendants give short shrift to 42 U.S.C. § 1983, which provides an independent basis for Plaintiffs' suit.

Defendants' argument that the Complaint should be dismissed under the doctrine of laches is also meritless.  Plaintiffs filed this suit just two election cycles after the 2022 redistricting map was enacted.  Many years, and three election cycles, lie ahead before the County Board districts may need to be redrawn for the 2032 election cycle based on 2030 Census data.  Given the fact-driven nature of Section 2 suits, courts have uniformly ruled that bringing suit after two election cycles is not delay, let alone inexcusable delay.  Nor have Defendants come close to demonstrating the requisite element of prejudice.

For the reasons set forth herein, the Court should deny Defendants' Motion.

## BACKGROUND

The Meriwether County Board of Commissioners is comprised of five Commissioners, all of whom are white.  FAC ¶ 57.  Each commissioner is elected through single-member districts.  *Id.* ¶ 2.  Black voters constitute a substantial percentage—35%—of the population in Meriwether County.  *Id.* ¶ 21.  But none of

the five districts provide Black voters with the requisite opportunity to elect candidates of choice. *Id.* ¶¶ 37, 59–63.

The 2022 redistricting map dismantled the one district that was represented by a Black commissioner at the time redistricting was being contemplated. *Id.* ¶¶ 37–41. Redistricting stakeholders on the Meriwether County Board and the Georgia Legislature did not provide a meaningful opportunity for public input and they rejected an alternative plan offered by the only state legislator who lives in Meriwether County, while ignoring warnings that the plan that was ultimately adopted risked reducing minority representation. *Id.* ¶¶ 39–46. In all four competitive interracial elections since the adoption of the 2022 redistricting plan, Black candidates were defeated by white opponents. *Id.* ¶¶ 59–61, 75, 93.

Plaintiffs commenced this litigation in October 2025 to remedy the discriminatory effects of the 2022 redistricting plan that have emerged over the last two election cycles. Three election cycles and over six years remain before the County Board districts may need to be redrawn for the 2032 election cycle based on the results of the 2030 Census. Plaintiffs seek both declaratory relief that the 2022 redistricting plan violates Section 2, and injunctive relief enjoining Defendants from

conducting any future Board of Commissioner elections under the 2022 redistricting plan.

## LEGAL STANDARD

"A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute." *Callen v. Daimler AG*, No. 1:19-CV-1411-TWT, 2021 WL 4523436, at *2 (N.D. Ga. Oct. 4, 2021); *see also Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 (11th Cir. 2004). "[A] defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. A complaint has failed to state a claim if the facts as pled, accepted as true, do not state a claim for relief that is plausible on its face." *Miller v. Thomas, Kennedy, Sampson & Tompkins, LLP*, No. 1:20-CV-04717-SCJ, 2021 WL 4815201, at *3 (N.D. Ga. June 17, 2021) (citation omitted). "In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

## ARGUMENT

### I. THESE PRIVATE PLAINTIFFS HAVE THE RIGHT TO BRING THEIR CLAIM UNDER SECTION 2 OF THE VOTING RIGHTS ACT

The text and structure of the VRA, Supreme Court precedent, the overwhelming weight of authority from courts in the Eleventh Circuit and elsewhere,

and the relevant legislative history, leave no doubt that private plaintiffs may bring suit to enforce Section 2 both through the implied private right of action in Section 2 itself and separately through Section 1983.

### A.    Section 2 Creates a Private Right of Action and Remedy

Defendants argue the "textual evidence" shows that Congress avoided creating a private cause of action to enforce Section 2.  Mot. at 8.  As demonstrated below, the text and structure of the VRA reflect Congress's express intent to create both a private right and a private remedy under Section 2.  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

*Gonzaga University v. Doe*, 536 U.S. 273 (2002), provides the "established method" for determining whether a statute creates private rights.  *Health & Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166, 183 (2023) (internal quotation marks omitted).  "[T]he *Gonzaga* test is satisfied where the provision in question is phrased in terms of the persons benefited and contains rights-creating, individual-centric language with an unmistakable focus on the benefited class."  *Id.*

Section 2 parallels the statutory language deemed by the Supreme Court to confer rights-creating language in *Health & Hospital Corporation of Marion County* in that the statutory section is framed with a focus on individual rights.  *Singleton v. Allen*, 740 F. Supp. 3d 1138, 1157–58 (N.D. Ala. 2024) (three-judge panel).  Section 2 begins with its title, which expressly refers to, and secures in mandatory terms,

protection against the "[d]enial or abridgement of *right* to vote on account of race or color through voting qualifications or prerequisites; establishment of violation." 52 U.S.C. § 10301 (emphasis added). This directive creates a scheme "indicative of an individual 'rights-creating' focus." *Marion Cnty.*, 599 U.S. at 184 (quoting *Gonzaga*, 536 U.S. at 284). Section 2(a) then describes "the right of any citizen of the United States to vote," prohibiting voting practices that abridge voting rights based on race, color, or language-minority status, while Section 2(b) discusses the individual, personal voting rights of persons who are "members of a class of citizens protected by subsection (a)." 52 U.S.C. § 10301(a)–(b). These subsections protect the enumerated class of citizens from voting practices with discriminatory results. *See Singleton*, 740 F. Supp. 3d at 1158.

As a result, "every sentence of Section Two either refers to rights of the benefited class, contains rights-creating language that creates new rights for that specific class, or expressly focuses on the benefited class." *Singleton v. Allen*, 782 F. Supp. 3d 1092, 1312 (N.D. Ala. 2025); *see also Singleton*, 740 F. Supp. 3d at 1158 (Section 2's rights-creating language stems not only from "the presence of the term 'rights' in Section Two, but rather the entire provision's focus on the rights of 'members of a protected class' and its place within the Voting Rights Act—a statute created, after all, for the sole purpose of enforcing a citizen's right to vote free from discrimination"); *Ala. State Conf. of NAACP v. Allen*, No. 2:21-cv-1531-AMM,

2025 WL 2451166, at *86 (N.D. Ala. Aug. 22, 2025) ("[I]f all of this [language in Section 2] is not rights-creating language with an unmistakable focus on the benefited class, it is difficult to imagine what is.").  While Defendants suggest that *Sandoval* dictates a different outcome, they ignore that "Section 2's precise and repetitive focus on the benefitted class distinguishes" it from Section 602 of the Civil Rights Act, the statute at issue in *Sandoval*, which did not even mention the benefited class.  *Singleton*, 740 F. Supp. 3d at 1158–59 (citing *Sandoval*, 532 U.S. at 288–89).

The presence of a private remedy for Section 2 violations is similarly clear in the statutory text and structure.  When Congress "reenacted and extended the life of the [VRA] in 1975," *Morse v. Republican Party of Virginia*, 517 U.S. 186, 233 (1996), it made two statutory changes that confirm that Congress intended a private remedy under Section 2.  First, Congress amended Section 3 of the VRA to empower courts to grant certain remedies, such as the appointment of federal examiners, whenever the Attorney General *or an aggrieved person* instituted a proceeding to enforce the guarantees of the Fourteenth and Fifteenth Amendments.  *See* S. Rep. No. 295, 94th Cong., 1st Sess. (1975), 1975 WL 12400; 52 U.S.C. § 10302 (emphasis added).[1]  The amendment to Section 3 made "what was once implied now

---

[1] The term "aggrieved person" refers to "any person injured by an act of discrimination" including "an individual or an organization representing the interests of injured persons." S. Rep. No. 295, 94th Cong., 1st Sess. (1975), 1975 WL 12400 (legislative history of the 1975 amendments to the Voting Rights Act).

explicit: private parties can sue to enforce the [VRA]." *Ala. State Conf. of NAACP v. Alabama*, 949 F. 3d 647, 651 (11th Cir. 2020), *cert. granted, judgment vacated as moot*, 141 S. Ct. 218 (2021).

Second, Congress added Section 14(e), which permits courts to award attorneys' fees to "the prevailing party, *other than the United States*," in any action "to enforce the voting guarantees of the [F]ourteenth or [F]ifteenth [A]mendment[s]." *Morse*, 517 U.S. at 234 (quoting Section 14(e)); *see also* 52 U.S.C. § 10310(e). Congress explained "[s]uch a provision is appropriate in voting rights cases because . . . Congress depends heavily upon private citizens to enforce the fundamental rights involved." S. Rep. No. 295, 94th Cong., 1st Sess. (1975), 1975 WL 12400. Section 2 is a statute to enforce the voting guarantees of the Fourteenth and Fifteenth Amendments. *United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1550 (11th Cir. 1984). Accordingly, "Congress must have intended it to provide private remedies." *Morse*, 517 U.S. at 234 (Stevens, J.); *see also, e.g.*, *Ala. State Conf. of NAACP*, 2025 WL 2451166, at *86 ("[T]he reference in Section Fourteen of the Voting Rights Act to private plaintiffs suing to enforce their voting rights supports the determination that Section 2 contains a private right of action.").

Notably, Defendants make no mention of Sections 3 and 14 in their brief. Defendants claim that Section 12, which in part addresses civil actions brought by the Attorney General, "says nothing about private plaintiffs or private remedies."

Mot. at 8.  But in fact, Section 12 grants district courts subject-matter jurisdiction over suits that are brought by "*a person* asserting rights under the provisions of [the VRA]."  52 U.S.C. § 10308(f) (emphasis added); *see also Allen v. State Bd. of Elections*, 393 U.S. 544, 555 n.18 (1969)*.*

## B.    Supreme Court Precedent and Eleventh Circuit Authority Support a Private Right of Action Under Section 2

Supreme Court precedent supports the existence of a private right of action under Section 2 of the VRA.  While the Supreme Court has not directly considered a challenge to the private right of action in Section 2, the Supreme Court has twice found a private right of action under analogous provisions of the VRA.  In *Allen v. State Board of Elections*, 393 U.S. 544 (1969), and *Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996) (plurality opinion), the Supreme Court found that Sections 5 and 10 of the Voting Rights Act could be enforced by a private right of action, even though those sections also provide for enforcement by the Attorney General.  *See Allen*, 393 U.S. at 555 n.18.  In fact, when the Court implied a private right of action under Section 10 in *Morse*, five justices based their opinion on the conclusion that Section 2 provides a private right of action.  517 U.S. 186, 231 (1996) ("Although § 2, like § 5, provides no right to sue on its face, 'the existence of the private right of action under Section 2 . . . has been clearly intended by Congress

since [the passage of the Voting Rights Act in] 1965.'") (plurality opinion) (quoting S. Rep. No. 417, 97th Cong., 2d Sess. 30 (1982), 1982 WL 25033).

In this case, Defendants argue Section 2 does not confer a private right of action because there is no express grant of a private right of action, whereas the Attorney General is expressly given an enforcement right in Section 12. However, these exact same arguments apply to Sections 5 and 10, and the Supreme Court considered and rejected them in *Allen* and *Morse*. *Allen*, 393 U.S. at 555 n.18 (finding "merit in the argument that the specific references to the Attorney General [in Section 12] were included to give the Attorney General power to bring suit to enforce what might otherwise be viewed as [exclusively] 'private' rights"); *Morse*, 517 U.S. at 232 (Stevens, J., with one justice joining) (reasoning that "[i]t would be anomalous . . . to hold that both § 2 and § 5 are enforceable by private action but § 10 is not"); *accord id.* at 240 (Breyer, J., with two justices joining) ("I believe Congress intended to establish a private right of action to enforce § 10, no less than it did to enforce §§ 2 and 5.").

The conclusion that Section 2 confers a private right of action was an essential part of the *Morse* Court's holding, and *Morse* should be treated as controlling. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."). Even if this Court considers this aspect of

*Morse* to be non-binding dicta, its highly persuasive reasoning should not be "lightly cast aside." *See Grant v. Raffensperger*, No. 1:22-cv-00122, Order [ECF No. 43], at 32 (N.D. Ga. Jan. 28, 2022) (quoting *Peterson v. BMI Refractories*, 124 F.3d 1386, 1392 n.4 (11th Cir. 1997)); *see also Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) ("[T]here is dicta and then there is dicta, and then there is Supreme Court dicta.").

Remarkably, Defendants do not even attempt to grapple with *Morse* or *Allen*, let alone explain why this Court ought to disregard such clear pronouncements from the Supreme Court. *See Singleton v. Merrill*, 582 F. Supp. 3d 924, 1031 (N.D. Ala. 2022) (finding that *Morse* "strongly suggests that Section Two provides a private right of action"); *see also Pendergrass v. Raffensperger*, No. 1:21-CV-05339-SCJ, 2022 WL 1518234, at *7 (N.D. Ga. Jan. 28, 2022).  Deference to the Supreme Court is particularly warranted under the circumstances present here, where private parties have been bringing Section 2 lawsuits for more than a half century. *See, e.g.*, *Shelby Cnty. v. Holder*, 570 U.S. 529, 537 (2013) (recognizing that "[b]oth the Federal Government and individuals have sued to enforce § 2"); Statement of Interest of the United States, Doc. 27 at 10, *Aquino v. Hazleton Area School District*, No. 3:24-cv-00206-KM, 2024 WL 4592346 (M.D. Pa. May 1, 2024) (noting that since 1982— when Congress amended Section 2 of the Voting Rights Act to require showing of discriminatory results, rather than intent—courts have entertained private right of

action in over 400 Section 2 cases, compared to "about 44 cases" brought by United States in that same time period). After all, if a court is to "now hold[], after almost 60 years, that cases filed by private individuals were never properly brought, it should be the Supreme Court, which has the controlling word on so momentous a change." *See, e.g.*, *Miss. State Conf. of NAACP v. State Bd. of Election Comm'rs*, 739 F. Supp. 3d 383, 412 (S.D. Miss. 2024).

The Eleventh Circuit itself has already decided that Section 2 offers a private right of action. *See Ala. State Conf. of NAACP*, 949 F. 3d at 651 (holding that Sections 2 and 3 of the Voting Rights together "impose[ ] direct liability on States for discrimination in voting and explicitly provide[ ] remedies to private parties to address violations under the statute"). While vacated on mootness grounds, *Alabama*'s analysis remains persuasive. *Caster v. Allen*, No. 2:21-CV-1536-AMM, 2025 WL 1643532, at *182 (N.D. Ala. May 8, 2025); *Ala. State Conf. of NAACP*, 2025 WL 2451166, at *88; *see also Robinson v. Ardoin*, 86 F.4th 574, 588 (5th Cir. 2023). To date, at least thirteen district courts in the Eleventh Circuit have considered whether there is a private right of action under Section 2 and unanimously determined that private plaintiffs may bring suit to enforce the guarantees of Section 2.[2]

---

[2] *See Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, 700 F. Supp. 3d 1136 (N.D. Ga. 2023); *Singleton v. Allen*, 782 F. Supp. 3d 1092 (N.D. Ala. 2025); *Singleton v.*

The overwhelming weight of decisions around the country agree that Section 2 offers a private right of action.  The Fifth and Sixth Circuits, and districts courts within the Third, Fourth, Seventh, and Tenth Circuits have also held that there is a private right of action.  *See Robinson*, 86 F.4th at 588; *Mixon v. Ohio*, 193 F.3d 389, 406 (6th Cir. 1999); *Aquino*, 2024 WL 4592346, at *3–6; *City of Hammond v. Lake Cnty. Judicial Nominating Comm'n*, No. 2:21CV160-PPS, 2024 WL 68279, at *4 n.3 (N.D. Ind. Jan. 4, 2024); *Coca v. City of Dodge City*, 669 F. Supp. 3d 1131, 1140 (D. Kan. 2023); *Perry-Bey v. City of Norfolk, Va.*, 678 F. Supp. 2d 348, 362 (E.D. Va. 2009).

Disregarding this overwhelming precedent, Defendants ask this Court to follow the opinions of a sharply divided Eighth Circuit in *Arkansas State Conference of NAACP v. Arkansas Board of Apportionment*, 86 F.4th 1204 (8th Cir. 2023) and *Turtle Mountain Band of Chippewa Indians v. Howe*, 137 F.4th 710, 721 (8th Cir.

---

*Allen*, 740 F. Supp. 3d 1138 (N.D. Ala. 2024); *Stone v. Allen*, 717 F. Supp. 3d 1161 (N.D. Ala. 2024); *Singleton v. Merrill*, 582 F. Supp. 3d 924 (N.D. Ala. 2022); *Fla. State Conf. of NAACP v. Lee*, 576 F. Supp. 3d 974 (N.D. Fla. 2021); *Ga. State Conf. of NAACP v. Georgia*, 269 F. Supp. 3d 1266 (N.D. Ga. 2017); *Driver v. Hous. Cty. Bd. of Elections*, No. 5:25-cv-25 (MTT), 2025 WL 2523719 (M.D. Ga. Sep. 2, 2025); *Ala. State Conf. of NAACP v. Allen*, No. 2:21-cv-1531-AMM, 2025 WL 2451166 (N.D. Ala. Aug. 22, 2025); *Caster v. Allen*, No. 2:21-cv-1536-AMM, 2025 WL 1643532 (N.D. Ala. May 8, 2025); *Ga. State Conf. of NAACP v. Georgia*, No. 1:21-CV-5338-ELB-SCJ-SDG, 2022 WL 18780945 (N.D. Ga. Sep. 26, 2022); *Pendergrass v. Raffensperger*, No. 1:21-CV-05339-SCJ, 2022 WL 1518234 (N.D. Ga. Jan. 27, 2022); *Caster v. Merrill*, No. 2:21-cv-1536-AMM, 2022 WL 264819 (N.D. Ala. Jan. 24, 2022).

2025).  *See Ark. State Conf. of NAACP v. Ark. Bd. of Apportionment*, 91 F.4th 967, 970 (8th Cir. 2024) (Colloton, C.J., dissenting from the denial of the petition for rehearing en banc) (describing the decision on the merits as "flawed" and "oblivious to the risk of anachronistic error and to the disruption of settled expectations").  But the Eight Circuit's opinions in these two cases constitute an extreme outlier; indeed, courts in the Eleventh Circuit and elsewhere have rightly declined to follow the Eighth Circuit's departure from "decades of controlling Section Two jurisprudence" in foreclosing the primary means of enforcing Section 2.  *See, e.g.*, *Stone v. Allen*, 717 F. Supp. 3d 1161, 1173 (N.D. Ala. 2024); *Ala. State Conf. of NAACP*, 2025 WL 2451166, at *87; *Miss. State Conf. of NAACP*, 739 F. Supp. 3d at 411; *Aquino*, 2024 WL 4592346, at *5.  These recent opinions reaffirm the vitality of the Supreme Court's decisions in *Allen* and *Morse*, as well as the Eleventh Circuit's well-reasoned analysis in *Alabama State Conference of the NAACP*.

### C.    The Legislative History of the Voting Rights Act Confirms There Is a Private Right of Action Under Section 2.

Eliminating Section 2's primary enforcement mechanism would defy the very purpose of the VRA.  Congress passed the VRA with the intent for it to spur vigorous enforcement, including by individual voters.[3]  In the Senate Report to the VRA's

---

[3] *See* Brief of Voting Rights Historians as *Amici Curiae*, 3, *Turtle Mountain Band of Chippewa Indians, et al. v Howe*, No. 23-3655 (8th Cir. June 13, 2025).

1975 Amendments, Congress reaffirmed that "private persons are authorized to request the application of the Act's special remedies in voting rights litigation," and explained that it is "sound policy to authorize private remedies" and thereby establish a "dual enforcement mechanism." S. Rep. No. 295, 94th Cong., 1st Sess. at 9, 1975 WL 12400, at 40 (1975). Yet again, in amending the VRA in 1982, Congress "reiterate[d] the existence of the private right of action under Section 2." S. Rep. No. 417, 97th Cong., 2d Sess., 1982 WL 25033, at 30 (1982); *see also* H.R. Rep. No. 227, 97th Cong., 1st Sess. 32 (1981) ("It is intended that citizens have a private cause of action to enforce their rights under Section 2."). In the 2006 amendments, too, Congress reaffirmed the availability of private enforcement. H.R. Rep. No. 478, 109th Cong., 2d Sess. (2006) (describing a case brought by private plaintiffs as "illustrative of the important role Section 2 plays").

Defendants argue that if Congress intended the VRA to include a private right of action, it would have written it into the Act during these amendments. But such "silence" "is neither surprising nor enlightening." *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 61 (1992). For decades, Congress consistently reenacted the VRA with full knowledge that "hundreds of cases have proceeded under the assumption that Section 2 provides a private right of action." *Coca*, 669 F. Supp. 3d at 1140. In making no effort to alter that assumption, Congress validated federal courts' longstanding interpretation that Section 2 may be enforced by private

plaintiffs. *United States v. Florida*, 938 F.3d 1221, 1244 (11th Cir. 2019) (concluding Congress had intended to create a system of enforcement in part because Congress considered it already available at the time of enactment). By leaving Section 2 unchanged, Congress has "ratified the federal courts' longstanding interpretation that Section Two may be enforced by private plaintiffs." *Caster*, 2025 WL 1643532, at *183 (reasoning that if courts had "consistently misunderstood a congressional enactment in case after case, court after court, decade after decade, surely Congress would have told us so by now").

At bottom, Defendants' argument that Section 2 can never be enforced by private plaintiffs cannot be squared with its text, structure, or history—as interpreted by the Supreme Court and various courts around the country, including the Eleventh Circuit, confirming a private right of action under Section 2.

### D. Even if Section 2 Did Not Confer a Private Right of Action, Private Plaintiffs Can Enforce Section 2 Through 42 U.S.C. § 1983

In addition to setting forth a private right of action through Section 2 itself, federal law provides a second avenue for private plaintiffs to sue under Section 2: Section 1983. It provides a right of action to sue for damages or equitable relief where a person has been "subjected . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. As Defendants acknowledge, Plaintiffs have included 42 U.S.C. § 1983 as a basis for their Section 2 claim. Mot. at 10.

A plaintiff may bring suit under Section 1983 regardless of whether Congress established a private remedy for the underlying substantive statute. *See Gonzaga*, 536 U.S. at 284 ("Plaintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes."). Section 1983 itself provides the remedy and "authorizes private parties to pursue violations of their federal statutory rights." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 367–68 (2025). If a federal statute confers rights on a particular class of persons, then private plaintiffs presumptively have the ability to sue to vindicate those rights under Section 1983, unless defendants can conclusively establish that Congress shut the door to a Section 1983 suit. *Gonzaga*, 536 U.S. at 284. To do so, defendants must point either to "specific evidence from the statute itself" that Congress "expressly forbid" the use of § 1983, or else to "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.*; *Marion Cnty.*, 599 U.S. at 186; *see also Blessing v. Freestone*, 520 U.S. 329, 341 (1997). In practice, once an individual right is established, the presumption is rarely rebutted. *Cf. Livadas v. Bradshaw*, 512 U.S. 107, 133 (1994) (instances where an individual right secured by federal law is not enforceable via Section 1983 are "exceptional cases").

For all the reasons discussed above, Section 2 confers an individual right, which is presumptively enforceable through Section 1983. *See Gonzaga*, 536 U.S.

at 284.  In fact, a "major purpose" of Section 1983's enactment was to "benefit those claiming deprivations of constitutional and civil rights." *Maine v. Thiboutot*, 448 U.S. 1, 9 (1980); *accord Marion Cnty.*, 599 U.S. at 175–76; *see also Schwier v. Cox*, 340 F.3d 1284, 1296 (11th Cir. 2003) (text of Materiality Provision of the VRA is "clearly analogous to the right-creating language cited by the Supreme Court in *Gonzaga*" and creates individual right enforceable in Section 1983 action).

Here, there is no basis for rebutting the presumption of Section 1983 enforceability.  The VRA's text does not preclude Section 1983 private enforcement of Section 2.  Indeed, it expressly contemplates such enforcement—specifically in Sections 3 and 14 which speak of actions by a "the Attorney General or an aggrieved person" and by "the prevailing party, other than the United States," *i.e.*, by a private individual who has been denied the right to vote.  52 U.S.C. §§ 10302, 10310(e). Nor is there an all-encompassing remedial or regulatory scheme at play that makes Section 1983 private enforcement impossible.  *See Blessing*, 520 U.S. at 341.  To the contrary, when Congress reenacted or amended the VRA, it understood that the substantive rights in Section 2 were already enforceable and had been enforced for nearly a century by private individuals.  *See, e.g.*, *Schwier*, 340 F.3d at 1295.

Defendants claim that even if Congress "did intend to confer an individual right" under Section 2, Congress nonetheless impliedly shut the door to Section 1983 enforcement.  Mot. at 12.  But Defendants fail to offer a single way in which private

enforcement of Section 2 claims under Section 1983 would be "incompatible" with public enforcement of those claims by the Attorney General. *See, e.g., Marion Cnty.*, 599 U.S. at 187 (describing the inquiry as whether Section 1983 enforcement would be "incompatible," "inconsistent," or "thwar[t]" statutory enforcement scheme"); *see also id.* at 188–89 ("[Section] 1983 can play its textually prescribed role as a vehicle for enforcing [statutory] rights, even alongside a detailed enforcement regime that also protects those interests, so long as § 1983 enforcement is not 'incompatible' with Congress's handiwork."). Far from precluding a Section 1983 remedy, Section 12 of the Voting Rights Act explicitly acknowledges that other remedies may be available under the law. 52 U.S.C. § 10308(f) (authorizing suits "without regard to whether a person asserting rights under the provisions of chapters 103 to 107 of this title shall have exhausted any administrative or other remedies that may be provided by law."). Defendants have not carried their burden to overcome the presumption of Section 1983 enforceability. *See, e.g.*, *Stone*, 717 F. Supp. 3d at 1172–73 (rejecting argument that private plaintiffs could not seek to enforce Section 2 under Section 1983).

As a result, Plaintiffs can bring a Section 1983 action to enforce their rights under the Voting Rights Act. Defendants' 12(b)(1) motion should be denied.

## II.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY LACHES

Defendants have not carried their heavy burden on any element of the laches defense: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997).

As a threshold matter, laches claims are generally rejected at the motion to dismiss stage, given the "the fact sensitive nature of a laches inquiry." *Louis Vuitton Malletier S.A.S v. Contour 5151 ONH, LLC*, 2025 No. 1:23-CV-02818-VMC, 2025 WL 3268849, at *3 (N.D. Ga. Jan. 28, 2025) (declining to consider laches defense at motion to dismiss stage); *Ga. Coal. for People's Agenda v. Kemp*, 347 F. Supp. 3d 1251, 1259 (N.D. Ga. 2018) (rejecting laches defense given the "limited factual record at this early stage of the case"); *Common Cause Ind. v. City of Anderson Common Council*, No. 1:23-CV-01022-JRS-TAB, 2023 WL 6460986, at *1 (S.D. Ind. Oct. 4, 2023) ("Laches . . . is both an affirmative defense—thus unsuited for resolution on a Rule 12(b)(6) motion—and an equitable doctrine—thus dependent on sensitive factual context."). In any event, Defendants fall far short of their burden.

*First*, there is no delay—let alone inexcusable delay. Plaintiffs filed suit just two election cycles after the 2022 redistricting plan was adopted, and over one year

before the next Board of Commissioners election.  Many years and three election cycles remain before the County Board districts may need to be redrawn for the 2032 election cycle based on the results of the 2030 Census.[4]  Courts have repeatedly found that redistricting lawsuits filed on similar timelines are timely.  *See, e.g.*, *Whitest v. Crisp County*, No. 1:17-CV-109 (LAG), 2020 WL 12656251, at *3 (M.D. Ga. Aug. 31, 2020) ("Given the 'particular challenges due to the fact-driven nature of the legal tests required by the Supreme Court' in assessing Section 2 claims and the need for experts to corroborate said claims, waiting two election cycles to file suit is not an inexcusable delay.") (citing *Ga. State Conference of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 775 F.3d 1336, 1348 (11th Cir. 2015)); *Shuford v. Ala. State Bd. of Educ.*, 920 F. Supp. 1233, 1239 (M.D. Ala. 1996) (rejecting defendants' argument that plaintiffs' Voting Rights Act challenge was barred by laches "because he waited through two election cycles before filing suit"); *Tenn. State Conf. of NAACP v. Lee*, 746 F. Supp. 3d 473, 506–07 (M.D. Tenn. 2024) (rejecting laches defense against lawsuit filed after first election cycle and that sought no relief until after next election cycle, "over halfway through the lifespan of the maps").

---

[4] If the maximum population deviation between the current Commissioner districts is less than ten percent according to the 2030 Census, then Meriwether County may decide not to redistrict during the next census cycle because adjustments to districts to comply with the Equal Projection Clause's one person, one vote requirement would likely not be necessary.

Defendants' argument is also in tension with the legal test established by *Thornburg v. Gingles* and its progeny. 478 U.S. 30 (1986). Election results from additional endogenous contests, particularly those held under current district boundaries, can strengthen a Section 2 case under *Gingles*. *See Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1301 (11th Cir. 2020). Here, the Complaint sets forth the discriminatory impact of the 2022 redistricting plan based on empirical evidence from prior election cycles in all five districts. Empirical evidence concerning all of the precise districts at issue in this case did not exist until the November 2024 election cycle was complete, and the ability of Plaintiffs and the Court to conduct this practical evaluation would be significantly hampered were Plaintiffs required, as Defendants suggest, to sue shortly after the plan was adopted.

The cases Defendants cite, Mot. at 13–15, were decided much closer in time to the next decennial census and involved significantly longer periods of time between the enactment of a districting map and plaintiffs' challenge. *See White v. Daniel*, 909 F.2d 99, 102–03 (4th Cir. 1990) (plaintiffs filed suit in 1988, 17 years after enactment of 1971 plan that was left unchanged following the 1980 Census, and after the last election prior to mandatory redistricting); *Sanders v. Dooly County*, 245 F.3d 1289, 1290 (11th Cir. 2001) (plaintiffs waited over six years to file suit); *Chestnut v. Merrill*, 377 F. Supp. 3d 1308, 1315–16 (N.D. Ala. 2019) (plaintiffs filed

suit seven years and three election cycles after challenged congressional map was enacted).[5]

Defendants also suggest Plaintiffs' claim should be dismissed because the "demographic makeup" of the 2022 redistricting map "is the same as the plan that existed since 2011" and Plaintiffs did not challenge the 2011 map.  Mot. at 14.  But Defendants' premise utterly ignores and contradicts the detailed allegations in the Complaint that the 2022 map is *not* "the same as the plan that existed since 2011." The Complaint alleges that the 2022 map reflects "significant changes to the district boundaries for all five County Board districts," compared to the 2011 map, including because it "reduced the Black voting age population in the two districts that had the most Black voters," and "dismantled District 1, the only district represented by a Black Commissioner at the time."  Compl.  ¶¶ 36, 38.  *See, e.g.*, *West v. Warden, Comm'r, Alabama Doc*, 869 F.3d 1289, 1296 (11th Cir. 2017) ("When considering a motion to dismiss, we 'accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor.'") (citation omitted).  The Amended Complaint alleges that the 2022 map was materially more discriminatory

---

[5] Defendants cite *Benisek v. Lamone*, 585 U.S. 155, 159 (2018), but that case does not address laches.   In *Benisek*, the Supreme Court affirmed the denial of a preliminary injunction that was first requested six years after enactment of the challenged congressional map.  In addition, plaintiffs first requested injunctive relief three years after filing suit, and requested that injunctive relief be granted within three months.

than the 2011 map and explains how the totality of the circumstances in Meriwether County have evolved over the years; that Plaintiffs did not bring suit to challenge the 2011 map in no way shows they "delayed" with respect to their challenge of the 2022 map.

*Second*, even were there delay (there was not), there is no undue prejudice. Defendants' claim of prejudice from "having to defend a state-chosen plan at a significant cost," Mot. at 15, is "specious because it is a harm that Defendant[s] would suffer regardless of when Plaintiff[s] filed [their] lawsuit." *Motley v. Taylor*, 451 F. Supp. 3d 1251, 1277 (M.D. Ala. 2020), *aff'd*, 2022 WL 1506971 (11th Cir. May 12, 2022).  In *White v. Daniel*, relied on by Defendants, there was undue prejudice where reapportionment would be required twice in consecutive years.  909 F.2d at 104.  Here, over five years remain before the 2030 Census will be conducted. And, as Defendants concede, additional elections will take place under the 2022 redistricting map.  Mot. at 14.  In fact, the 2022 map will be in effect in elections held in 2026, 2028, and 2030, absent relief from this Court.  Defendants have identified no prejudice from redrawing the map in these circumstances.

*Finally*, even if Defendants had a meritorious laches defense (they do not), it would only preclude Plaintiffs from seeking injunctive relief, but does not impact their request for declaratory relief.  "[T]he third element of a laches defense— prejudice to the defendants from the unexcused delay—is missing" in a redistricting

claim seeking declaratory relief. *Sanders*, 245 F.3d at 1291. Thus, "[e]ven if the court were to find that Defendant would be prejudiced as to injunctive relief" under the doctrine of laches, "declaratory relief would still be available to Plaintiffs." *Chestnut*, 377 F. Supp. 3d at 1318.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied. In the event the Court grants any part of the Motion, Plaintiffs request leave to modify the First Amended Complaint accordingly.[6]

---

[6] While Plaintiffs believe applicable law is clear such that Defendants' Motion can readily be denied on the papers, should the Court wish to hold oral argument, an attorney who is six years or less out of law school would conduct a substantial majority of the argument on Plaintiffs' behalf.

Dated: December 19, 2025

/s/ Gail Podolsky

PODOLSKY LAW LLC
Gail Podolsky (Ga. Bar No. 142021)
1100 Peachtree Street NE, Suite 900
Atlanta, Georgia 30309
(404) 282-7776
gail@podolsky-law.com

ADVANCEMENT PROJECT
John Powers*
Hani Mirza*
Sonali Seth*
1220 L Street Northwest, Suite 850
Washington, DC 20005
(202) 728-9557
jpowers@advancementproject.org
hmirza@advancementproject.org

SIMPSON THACHER & BARTLETT
LLP
Preston Miller*
Geoffrey Schmelkin*
Shinae Yoon*
Megan Lacombe**
900 G Street, NW
Washington, D.C. 20001
(202) 636-5500
preston.miller@stblaw.com
geoffrey.schmelkin@stblaw.com
shinae.yoon@stblaw.com

Joshua Polster*
Nihara K. Choudhri*
Jacob Lundqvist*
425 Lexington Avenue
New York, NY 10017

(212) 455-2000
joshua.polster@stblaw.com
nchoudhri@stblaw.com
jacob.lundqvist@stblaw.com

*Attorneys for Plaintiffs*

\*Admitted Pro Hac Vice
\*\*Application for Admission Pro Hac Vice Forthcoming

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1(C) of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

/s/ *Gail Podolsky*
Gail Podolsky
Georgia Bar No. 142021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF, which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

This 19th day of December, 2025.

/s/ *Gail Podolsky*
Gail Podolsky
Georgia Bar No. 142021
